F I L E D
Clerk
District Court

APR 1 0 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  LEONARDO M. RAPADAS
   United States Attorney
2  ERIC S. O'MALLEY
   Assistant United States Attorney
3  DISTRICT OF THE NORTHERN
   MARIANA ISLANDS
4  Horiguchi Building, Third Floor
   P. O. Box 500377
5  Saipan, MP 96950-0377
   Telephone:    (670) 236-2980
   Fax:          (670) 236-2985
6
   Attorneys for United States of America
7

8                 IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN MARIANA ISLANDS

10 UNITED STATES OF AMERICA,        )    CRIMINAL CASE NO. **08 - 00013**
                                    )
11              Plaintiff,          )
                                    )
12      vs.                         )    COMPLAINT
                                    )
13 IL CHO and MIN JO,               )
                                    )
14              Defendants.         )
   _____)

15

16 THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

17                              **COUNT ONE**

18                       **COPYRIGHT INFRINGEMENT**

19      On or about March 19, 2008, in the District of the Commonwealth of the Northern Mariana

20 Islands, IL CHO and MIN JO, the defendants, did willfully and for the purposes of commercial

21 advantage and private financial gain, infringe a copyright by reproducing and distributing the motion

22 picture "BUCKET LIST", in violation of Title 17, Unites States Code, Section 506(a)(1)(A), and Title

23 18, United States Code, Section 2319.

24

25

1

**COUNT TWO**

2

**COPYRIGHT INFRINGEMENT**

3

On or about March 19, 2008, in the District of the Commonwealth of the Northern Mariana

4

Islands, IL CHO and MIN JO, the defendants, did willfully and for the purposes of commercial

5

advantage and private financial gain, infringe a copyright by reproducing and distributing the motion

picture "JUNO", in violation of Title 17, Unites States Code, Section 506(a)(1)(A), and Title 18, United

6

States Code, Section 2319.

7

8

**COUNT THREE**

9

**COPYRIGHT INFRINGEMENT**

10

11

On or about March 19, 2008, in the District of the Commonwealth of the Northern Mariana

12

Islands, IL CHO and MIN JO, the defendants, did willfully and for the purposes of commercial

advantage and private financial gain, infringe a copyright by reproducing and distributing the motion

13

picture "BEE MOVIE", in violation of Title 17, United States Code, Section 506(a)(1)(A), and Title 18,

14

United States Code, Section 2319.

15

16

COMPLAINANT FURTHER STATES:

17

18

I have been a Special Agent (SA) of the FBI for 18 years. For the last five years I have been

19

assigned to the Honolulu Division, Saipan Resident Agency.

20

1.    On March 18, 2008, I spoke with Ellis Miller who told me the following:

a) He is the owner of the three Kevin's Video stores on Saipan. Since he started his

21

business in 1997 he has been aware of the sale and rental of pirated video tapes and DVD's by other

22

video rental businesses on Saipan. He estimates the economic impact of the sale and rental of pirated

23

movies by his competitors to be in excess of $500 per day in lost revenue to his company.

24

b) He has retained an attorney to pursue a civil suit against his competitors who are

25

-2-

acting outside the law by selling and renting pirated movies.  His attorney has hired an investigator to assist in collecting evidence for the civil suit.

2.    On March 12, 2008, I met with LIMSON SOUELIAN who told me the following:

a)  He is assisting an attorney named Matthew Smith in collecting evidence for a civil suit against several movie rental companies alleged to be distributing pirated videos.

b)  On or about March 11, 2008, he went to the SEOUL VIDEO store in Chalan Kanoa and saw approximately 30 video tape and DVD players/recorders on racks located in an office.  The machines appeared to be in operation.  He took pictures of the machines and supplied copies to me.

c)  He rented a DVD of the movie "JUNO" for $2 while he was in the store.

3.    On March 12, 2008, I reviewed several color photographs provided to me by SOUELIAN.  The pictures are purported to have been taken of the interior of an office at the SEOUL VIDEO store by SOUELIAN on March 11, 2008.  I counted what looked to me to be at least 27 video and DVD recording and/or CD disks similar to DVD-R and CD-R recordable disks that can be used for copying DVD's and CD's.

4.    On March 19, 2008, I asked a cooperating witness (CW) to attempt to rent pirated videos from SEOUL VIDEO.  I observed the CW enter the store and exit a few minutes later with a bag.  A short time later I met with CW at a previously agreed upon location.  The CW told me the following:

a)  Upon entering the store he asked to see recently released videos.  An employee of the store directed him to a shelf containing several empty DVD containers with titles on the containers.  He recognized the titles "BUCKET LIST", "JUNO", and "BEE MOVIE" and asked if he could rent them.  The employee then went to a back room and returned with the three movies.

b)  The CW told the employee that he/she thought JUNO was still in the theaters and therefore not available for rent.  The employee advised that the DVD came from Korea where the movie had already been in theaters and was therefore available for release.

c)  The CW rented the movies for $2 each and provided them to me.

d)  The conversation was surreptitiously recorded by the CW.

5.      Also on March 19, 2008, following my meeting with the CW, I examined the videos rented by the CW. I observed the following:

a)  The exterior of the plastic box containing each video says "Seoul Video."

b)  A warning on each box says, "We prohibit any damages or illegal copying of the DVD's. We will charge responsibility of damaged DVD's to the members."

c)  Each DVD had a label affixed to it that identifies the movie, and the studio that produced it. The labels also had a sticker that says, "Seoul Video" and a bar code. The labels could be peeled off.

6.      On March 20, 2008 I spoke with Kevin Sun. He told me the following:

a)  He is Deputy Director, U.S. Anti-Piracy Operations for the Motion Picture Association of America.

b)  The movies "JUNO" and "BUCKET LIST' had not yet been released in DVD, therefore any copy currently available to the public would have to be pirated.

c)  DVD's legally released for rental by the movie studios have a silk screened label that cannot be peeled off.

7.      On March 26, 2008, a Federal search warrant was executed at SEOUL VIDEO. Among the items seized were thousands of DVD's and VHS tapes of recently released motion pictures, 32 DVD and VHS players/recorder, ten boxes of blank DVD-R's, 26 boxes of label paper, ten boxes of VHS labels, ten DVD "burners", six bottles of printing ink, and several pages of DVD labels.

8.      During the search of Seoul Video on March 26, 2008, I interviewed CHO and JO. CHO told me he is the manager and JO said he was an employee. CHO and JO told me they use the equipment to make copies of "Korean dramas". They further admitted to purchasing movie DVD's from Korea and copying them onto VHS tapes for sale and rent to customers.

9.      Based on the foregoing, I believe there exists probable cause to believe that IL CHO and MIN JO violated Title 17, United States Code, Section 506, Infringement of a Copyright, Title 18, United States Code, Section 2318 and Title 18, United States Code, Section 2319, Criminal Infringement of a Copyright.

Respectfully submitted this 10th day of April, 2008.

_____
Joseph E. Auther, Special Agent, FBI

SUBSCRIBED and SWORN to before me this *10TH* day of April, 2008.

_____
ALEX R. MUNSON
UNITED STATES DISTRICT JUDGE